**Myron MANN, Plaintiff–Appellant,**

v.

**James HENDRIAN, Defendant–Appellee.**

**No. 88–1675.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 24, 1989.

Decided March 2, 1989.

Walter S. Clifton, Urbana, Ill., for plaintiff-appellant.

Valerie J. Peiler, Asst. Atty. Gen., Chicago, Ill., for defendant-appellee.

Before POSNER, FLAUM and KANNE, Circuit Judges.

POSNER, Circuit Judge.

An Illinois state court ordered Myron Mann to make payments for the support of his child. He failed to do so, was held in contempt, and was sentenced to sixty days in jail by Judge James Hendrian. Mann did not appeal from the judgment of contempt, although he now contends that his refusal to comply with the order was not willful but was due rather to his poverty,

and if so then of course he should not have been punished. Instead of appealing, Mann brought the present suit, a federal court action under 42 U.S.C. § 1983, against Judge Hendrian. The suit alleges that the judge advised Mann neither of his right to retain counsel to represent him at the contempt proceeding nor of his right to court-appointed counsel if he was unable to afford retained counsel, and by these omissions violated Mann's Sixth Amendment right to counsel, made applicable to the states by interpretation of the Fourteenth Amendment. The suit further alleges that Judge Hendrian has a policy of refusing to appoint counsel for indigent defendants in contempt proceedings arising out of non-compliance with child-support orders. The relief sought is a declaration that Judge Hendrian's practice is unconstitutional and an injunction against the judge's either repeating his alleged violations of Mann's right to counsel, or ordering him imprisoned should he commit a further contempt of the support order (which continues in force) unless the judge advises Mann of his right to counsel. The district court dismissed the suit on the ground that Mann has no standing to maintain it because (among other reasons) he has failed to allege that if he has a lawyer in his next contempt proceeding the lawyer will save him from imprisonment.

We agree with the district court's result although not with all the details of its reasoning. If Mann has not shown that the injunction he requests is likely to do him some tangible good, then he has no standing to maintain this lawsuit, see, e.g., *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 43–44, 96 S.Ct. 1917, 1926–27, 48 L.Ed.2d 450 (1976), and this principle turns out to be dispositive of the appeal. It is plainly so with respect to Judge Hendrian's failing to *advise* Mann of his right to counsel.

■ A defendant has, of course, a right to the assistance of counsel, and if he can't afford to hire counsel to have the court appoint counsel for him, in a criminal proceeding that actually results in a prison sentence. See, e.g., *Scott v. Illinois*, 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979). Criminal contempt is no exception, except for contempts committed in the presence of the court that must be punished on the spot to maintain the court's authority. See, e.g., *In re Oliver*, 333 U.S. 257, 275, 68 S.Ct. 499, 508, 92 L.Ed. 682 (1948). (This of course was not such a case.) The contempt proceeding in this case was, in fact if not in name, a criminal proceeding because Mann received a fixed sentence—sixty days in prison. See *In re Marriage of Humphrey*, 121 Ill.App.3d 701, 77 Ill.Dec. 193, 460 N.E.2d 52 (1984). And however the proceeding be classified under state law, the fixed sentence would bring the case within the scope of the constitutional right to counsel. Cf. *Lassiter v. Department of Social Services*, 452 U.S. 18, 25–27, 101 S.Ct. 2153, 2158–60, 68 L.Ed.2d 640 (1981) (dictum).

*Ridgway v. Baker*, 720 F.2d 1409 (5th Cir.1983), and *Walker v. McLain*, 768 F.2d 1181 (10th Cir.1985), go further, and hold that there is a right to counsel in a purely civil contempt proceeding that eventuates in imprisonment, albeit for a term wholly dependent on the defendant's own obduracy. Cf. *In re Gault*, 387 U.S. 1, 27, 41, 87 S.Ct. 1428, 1443, 1451, 18 L.Ed.2d 527 (1967); *United States v. Bobart Travel Agency, Inc.*, 699 F.2d 618 (2d Cir.1983). And *Ridgway* and *Bobart*, along with several cases cited in them, suggest that there is a right to counsel in civil contempt proceedings, period, unless it is made clear to the defendant at the outset that he will not be imprisoned for the contempt. See 720 F.2d at 1415; 699 F.2d at 620. This position seems inconsistent with *Scott v. Illinois*, but that is not an issue we need pursue in this case. Nor did we worry about whether the contempt proceeding in this case began as a civil contempt proceeding or as a hybrid civil-criminal contempt proceeding (the record does not indicate which); it ended with a criminal rather than a civil sanction.

The important point is merely this: whatever Mann may or may not have known about the right to counsel the first time he was ordered to show cause why he should not be held in contempt, *now* he believes

and is prepared vigorously to assert that he has such a right, so he doesn't need an order that the judge tell him of that right if and when he is again accused of violating the support order. Other violators may need the information, but this is not a class action. Cf. *Johnson v. Zurz,* 596 F.Supp. 39, 44 (N.D.Ohio 1984); *In re Class Action Application for Habeas Corpus,* 612 F.Supp. 940 (W.D.Tex.1985).

Mann also seeks an injunction against Judge Hendrian's refusing to appoint counsel for him if (as he asserts) he can't afford to hire his own counsel. But because Mann seeks relief only against Judge Hendrian yet makes no effort to show how likely it is that the next time he violates the support order he will be hauled before Judge Hendrian rather than some other judge, it is speculative that the order Mann seeks will ever do him any good, and that is not good enough. See *Moore v. Thieret,* 862 F.2d 148 (7th Cir.1988). *BNA's Directory of State Courts Judges and Clerks* (2d ed. 1988) reports that the Illinois Circuit Court for the Sixth Judicial District—Judge Hendrian's court—has 22 judges, of whom eight (including Judge Hendrian) sit in Macon County. Thus, so far as we can tell, Mann has only a one-in-eight (12.5 percent) chance of coming up next before Judge Hendrian.

Mann would in our view lack standing to maintain this lawsuit even if it were certain that Judge Hendrian would be assigned Mann's next case. For it is a matter of conjecture whether there will ever *be* a next case against Mann. He says that because he was in jail serving his sixty-day sentence for contempt he was unable to make the next support payment when it fell due, and he therefore expects to be prosecuted for contempt again. But if, as he appears to be suggesting, he failed to pay only because he couldn't afford to pay, then he is not in contempt of the support order. So it is a matter of speculation whether he will again find himself prosecuted for contempt unless he deliberately violates the support order—and he cannot establish standing by claiming that he intends to commit a crime. See *O'Shea v. Littleton,* 414 U.S. 488, 497, 94 S.Ct. 669,

676, 38 L.Ed.2d 674 (1974); *City of Los Angeles v. Lyons,* 461 U.S. 95, 103, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983). Anyway he doesn't argue that he intends to commit a crime—that is, to flout the order. He just is fearful that even though he is financially unable to comply, he will be prosecuted, and he wants it clearly established in advance that he has a right to counsel if and when this happens. But it is highly uncertain that it will ever happen unless he makes it happen by committing a crime.

■ And if it does happen, he can assert his constitutional defense in the criminal proceeding, appeal any adverse judgment to the appellate courts of Illinois, and if need be seek federal habeas corpus. The existence of such avenues raises a profound doubt that Mann could ever obtain the injunction he seeks: not only because he has adequate remedies at law, see *O'Shea v. Littleton, supra,* 414 U.S. at 502, 94 S.Ct. at 679, but also because section 1983 cannot be used as a vehicle for collaterally attacking a criminal conviction and thereby circumventing the requirement of exhausting state remedies before turning to federal court for post-conviction relief, see *Scruggs v. Moellering,* 870 F.2d 376 (7th Cir.1989). On these grounds relief similar to that sought by Mann was denied in *Parker v. Turner,* 626 F.2d 1 (6th Cir. 1980). But the defect in Mann's suit goes deeper than a want of equity or a failure to exhaust state remedies. Article III of the Constitution prevents Mann from maintaining a federal-court action for an injunction against a judge who may—but very possibly may not—try Mann for contempt in the uncertain event that Mann is again prosecuted for willful failure to make support payments, and who in the course of the contempt proceeding may violate Mann's constitutional rights.

■ We therefore disagree with the holding in *Parker v. Turner, supra,* 626 F.2d at 5 n. 11, and with the (alternative) holding of *Walker v. McLain, supra,* 768 F.2d at 1181–82, that the possibility of a

subsequent contempt proceeding for non-support is enough to create standing to complain about the procedures expected to be followed in that proceeding. *Parker* disposes of the issue in one sentence in a footnote, and *Walker* was a habeas corpus case rather than, as here, a civil rights suit. But our decision creates a tension, rather than a conflict, between circuits. In *Walker* the previous contempt judgment had collateral consequences, enabling Walker to challenge it even though he had served his sentence, while *Parker* is distinguishable from the present case by virtue of Mann's failure to show that he is likely to come up against Judge Hendrian again should there be another contempt proceeding.

AFFIRMED.