2024 IL App (1st) 230455
No. 1-23-0455
November 15, 2024

FIFTH DIVISION

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| DAVID WOLKOWITZ, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff and Counterdefendant-Appellee, | ) | |
| | ) | |
| v. | ) | No. 2020 M2 001971 |
| | ) | |
| ANDREA JAMISON, | ) | The Honorable |
| | ) | Jeffrey L. Warnick |
| Defendant and Counterplaintiff-Appellant.) | | Judge, presiding. |

JUSTICE ODEN JOHNSON delivered the judgment of the court, with opinion.
Presiding Justice Mikva and Justice Navarro concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant Andrea Jamison appeals the trial court's denial of her motion to vacate the judgment after she failed to appear at the bench trial. For the following reasons, we find that the trial court did not abuse its discretion in denying her motion and affirm.

¶ 2                                    I. BACKGROUND

¶ 3    On July 15, 2020, plaintiff David Wolkowitz, an attorney, filed a complaint seeking $2234.39 in unpaid legal fees from defendant, a former client, whom plaintiff had represented in a child custody action. The action was filed in small claims court. On April 19, 2022, the court granted plaintiff's motion for service by alternate means after "diligent service attempts"

on defendant had failed. On May 12, 2022, defendant filed an appearance indicating that she would be representing herself and providing her e-mail address and phone number.

¶ 4    On May 25, 2022, defendant failed to appear, and the matter was continued to June 28, 2022. The continuance order stated that the June 28 hearing would be a Zoom hearing, and the order had a one-page attachment with Zoom instructions. The one-page attachment provided a telephone number to call if the recipient had any questions.

¶ 5    A subsequent order entered on June 28, 2022, stated that a status conference would be held on August 3, 2022, that, prior to the conference, the parties must exchange by e-mail the exhibits they intended to present at trial, and that the August 2, 2022, conference would be held via Zoom. The June 28, 2022, order also had the one-page attachment with Zoom instructions.

¶ 6    On July 20, 2022, defendant, acting *pro se*, filed an answer in which she acknowledged that she had signed a retainer agreement in 2014 for plaintiff to represent her in a child custody case. In her answer, defendant alleged that plaintiff had been paid approximately $28,200 during the six years that he had represented her, that this amount included $17,000 paid by the opposing side, and that she terminated his representation in May 2020 and retained other counsel. Regarding the approximate $2200 amount alleged by defendant as owed by her, plaintiff stated that she had "insufficient information" to admit or deny that allegation.

¶ 7    In her answer, defendant also alleged numerous affirmative defenses: unclean hands, breach of contract, failure to act with diligence, failure of consideration, and consumer fraud. Defendant further alleged two counterclaims: legal malpractice/breach of contract and legal malpractice/breach of duty. The gist of these defenses and claims was that plaintiff did not provide her with itemized billing statements and did not file a motion for trial or a motion to relocate.

¶ 8          On August 3, 2022, defendant was granted leave to file an amended answer by August 24, 2022, and the matter was continued again to September 21, 2022, for a status conference. On August 24, 2022, defendant filed an amended answer with details about alleged billing errors in the billing statements that plaintiff had provided. Defendant acknowledged that, originally, plaintiff had provided regular billing statements but stopped after defendant was awarded $7000 in interim fees and $10,000 in prospective fees from the opposing party (her son's father). Defendant was unaware of any amounts owed or due during the three years after the award, and she believed that the fees awarded were sufficient to cover what was owed.

¶ 9          On September 14, 2022, plaintiff filed a motion to strike defendant's amended answer and counterclaims, arguing, among other things, that the answer was not signed.[1] On September 21, 2022, the trial court continued the matter to October 26 for a hearing on plaintiff's motion, and the court permitted defendant to file a response by October 20, 2022, which she did. A one-page attachment to the order stated that the October 26 hearing would be by Zoom. On October 26, 2022, the trial court continued the matter, setting the hearing on the motion for November 2, 2022. A one-page attachment to the order stated that the November 2, 2022, hearing would be by Zoom.

¶ 10          After the November 2, 2022, hearing, an order was entered on November 3, 2022, stating that both parties had been present but that the order was issued "without argument from the parties." The order directed defendant to file a signed verification to her amended answer, which had been filed on August 24, 2022. Plaintiff's motion to strike was granted with respect to certain portions of the answer that were "not concise or responsive." The court also struck

---

[1]Illinois Supreme Court Rule 137(a) (eff. Jan. 1, 2018) states that "[a] party who is not represented by an attorney shall sign his pleading."

"all affirmative defenses" and the second counterclaim. The first counterclaim, for legal malpractice/breach of contract, remained.

¶ 11    The very first item on the short, one-page November 3, 2022, order stated: "1. A trial on this matter shall occur in person, on December 14, 2022, at 1:30 p.[m.]." The order, unlike most of the prior orders, did not have the one-page Zoom instructions attached. Pursuant to the order, defendant filed a signed verification on November 9, 2022.

¶ 12    The only hearing for which we have a transcript is the December 14, 2022, trial, and it begins:

"THE COURT: Let the record reflect that this matter of David Wolkowitz versus Andrea Jamison was set for a bench trial today on the 14th of December at 1:30. I came out at that time. Ms. Jamison has not appeared. I had went [*sic*] back into chambers. That was about 12, 14 minutes ago, and we've heard no word from Ms. Jamison about her whereabouts whatsoever. So, it is set for trial.

So, Mr. Wolkowitz, tell me what you'd like to do. Would you like to proceed with trial?

MR. WOLKOWITZ: Yes, I would.

THE COURT: Then it's set for trial. I'm ready to hear a trial. If she's not here, she hasn't advised the Court, and she's waived her ability to be here. Unless she shows up later, then we have no word about that."

Before receiving testimony, the court swore plaintiff as a witness. The transcript, which is 27 pages long, establishes that the court heard from plaintiff, asked him numerous questions, and reviewed his documents. On appeal, plaintiff makes no allegations regarding errors in the admission of evidence at trial.

¶ 13    With respect to the evidentiary proof, the court commented that plaintiff had "really done a lot of work organizing this." The court noted that it had a "whole binder" with e-mails, invoices, and other exhibits and that plaintiff had also provided "a folder here of defendant's exhibits, should defendant have prosecuted her case," concerning her malpractice counterclaim.

¶ 14    Regarding the exhibits, the court found that it had "a complete and set [*sic*] file." After plaintiff rested, the court found that plaintiff had met his "burden of proof easily" and entered judgment for plaintiff. The trial court also dismissed defendant's legal malpractice counterclaim with prejudice due to "her failure to prove anything on that."

¶ 15    Toward the end of the trial, plaintiff read into the record the portion of his retainer agreement with defendant, which states that, "[i]f Client does not pay invoiced amount, Client shall be responsible for the costs of collection, including court costs and attorney's fees." Pursuant to that clause, plaintiff asked for costs, such as those incurred for copying the lengthy exhibits.

¶ 16    After the bench trial on December 14, 2022, the trial court entered an order that began by stating that defendant had "failed to appear for trial personally or through counsel." The judgment for plaintiff after trial was $2234.39, with costs assessed against defendant. The costs were a filing fee of $287, a service fee of $75, a court reporter fee of $320, and a printing fee of $100, for a total of $782 in costs awarded to plaintiff.

¶ 17    The order further stated: "The court finds: Plaintiff Wolkowitz easily met his burden. Andrea Jamison's Count I counterclaim dismissed with prejudice; Count II counterclaim having been previously dismissed. Judgment entered for Plaintiff David Wolkowitz and against Defendant Andrea Jamison in the amount of $3,016.39."

¶ 18　　　On January 5, 2023, defendant, through an attorney, filed a motion to vacate pursuant to section 2-1203 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1203 (West 2020)).[2] The attorney-drafted motion alleged that defendant believed the trial would be conducted by Zoom, that she and her two witnesses were waiting for it to begin, and that, after several minutes, defendant e-mailed the trial judge asking about the status of the trial. This motion was signed by defendant's attorney, rather than by defendant, and it was not accompanied by affidavits from defendant or the two witnesses waiting with her or a copy of the e-mail she sent to the court.

¶ 19　　　In a signed and verified motion,[3] plaintiff moved for sanctions pursuant to Illinois Supreme Court Rule 137 (eff. Jan. 1, 2018), alleging, among other things, that defendant had failed to appear at a prior conference, had filed an unsigned answer, and had filed an ARDC complaint against plaintiff which the ARDC decided not to pursue. Plaintiff further alleged:

> "On December 14, 2022, Attorney Wolkowitz appeared for trial, in person, in court as ordered in the Trial Order, Ms. Jamison did not appear. The Court began the trial after waiting more than 15 minutes past the ordered trial start time, and after having the deputy check the hallway for Ms. Jamison's presence."

The motion sought sanctions in the amount of $5,680 for the cost of plaintiff's time in pursuing this matter.

¶ 20　　　In his signed and verified response to the motion to vacate, filed on January 31, 2023, plaintiff stated:

---

[2]On the same day, January 5, 2023, an attorney filed an appearance for defendant.

[3]"The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other document; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact ***." Ill. S. Ct. R. 137(a) (eff. Jan. 1, 2018).

No. 1-23-0455

> "During the Nov. 2, 2022, status, the Court asked whether or not the Parties wanted the
> trial on Zoom, or in person. Attorney Wolkowitz stated that he preferred in person,
> because it was easier to handle exhibits in person. Ms. Jamison did not object, and the
> Court ordered the trial to be in person."

Plaintiff also repeated the above paragraph in a signed affidavit attached as an exhibit to his response. In another exhibit, plaintiff included an e-mail exchange on November 2 and November 3, 2022, in which plaintiff had attached the draft order with the "in person" language and asked defendant for her comments. Defendant replied that she had read over both the draft order and her notes from the November 2, 2022, hearing and that she believed that the court had struck certain material for being not concise, rather than being not responsive.

¶ 21        This e-mail exchange, plaintiff argued, showed how closely defendant had reviewed the "in person" draft order. Plaintiff also argued that defendant lived in Normal, Illinois; that the weather was rainy and overcast on December 14, 2022; that she may not have wanted to drive the two and a half hours to Skokie, Illinois; and that she may have hoped "she could appear on Zoom" and "then feign ignorance regarding the need to appear in person."

¶ 22        Plaintiff further argued that, although defendant had moved pursuant to section 2-1203 of the Code, "[s]ection 2-1301(e) of the Code contains the guidelines the Court must employ in determining whether or not to vacate a judgment."

¶ 23        In her reply, defendant responded:

> "Plaintiff erroneously argues that this matter is governed by 2-1301. This is a
> misinterpretation of the statute. [Section] 2-1301 applies to default judgments. It is well
> understood that default judgments occur when the defendant has failed to appear. ***

7

[T]he communication from the Court indicated that a trial had been conducted in the matter and that a judgment was entered against her."

¶ 24     On January 24, 2023, the court entered an order stating that it would hold a Zoom hearing on February 15, 2023, on defendant's motion to vacate. On February 15, 2023, the trial court entered a written order denying defendant's motion to vacate. The court stated that it had reviewed the motion, response and reply, as well as the exhibits attached to plaintiff's response, which contained the communications between plaintiff and defendant regarding the order that set an "in person" trial for December 14, 2022. The court concluded:

"On December 14, 2022, the Court entered a judgment based on evidence, both documentary and testimonial. Though it is within the sound discretion of the Court to grant the 1203 motion,[4] Defendant has not stated a good cause for vacating the judgment of December 14, 2022."

The order further noted that plaintiff had withdrawn, without prejudice, his motion for sanctions. The above order indicates that the court treated defendant's motion to vacate as a section 2-1203 motion.

¶ 25     On March 9, 2023, defendant filed a notice of appeal. On March 15, 2023, the court granted defendant's motion to approve an appeal bond and to stay enforcement of judgment. The court stayed enforcement, conditioned on defendant's posing a $4550 bond with the clerk of the court by March 17, 2023. Defendant subsequently tendered a proposed bystander's report to plaintiff regarding the February 15, 2023, hearing, since no verbatim transcript is available for the hearing at which the court denied her motion to vacate. On April 26, 2023,

---

[4]This is a reference to section 2-1203 of the Code, which is entitled "Motions after judgment in non-jury cases." 735 ILCS 5/2-1203 (West 2020).

plaintiff filed a motion for a hearing on defendant's proposed bystander's report, stating: "Plaintiff rejects Defendant's proposed bystander report."

¶ 26    In defendant's response to plaintiff's motion for a hearing, defendant observed that plaintiff had sent her his own proposed bystander's report. After reviewing it, defendant admitted that she revised her own report, and she attached her revised report, as well as plaintiff's proposed report.

¶ 27    On July 7, 2023, the parties filed a "Stipulation as to Supplemental Record," which stated, in relevant part: "The attached order of the Court on May 3, 2023[,]is the Bystander's Report of the hearing that took place on February 15, 2023[,] on the Defendant's Motion to Vacate the Judgment entered on December 14, 2022."

¶ 28    The attached order, dated May 3, 2023, stated in full:

> "This Cause coming to be heard on the parties' cross-motions to approve a Bystander's Report, with the following persons appearing by Zoom: Plaintiff, Defendant, Michael Bankhead Defendant's trial counsel, and Philip Piscopo Defendant's appellate counsel, the Court having reviewed the parties' proposed Bystander's Reports, having given the parties the ability to have a court reporter present which offer was declined, and the Court being fully advised in the premises, orders:

> 1. The Court rejects both parties' proposed Bystander's Reports as being excessively argumentative and factually incorrect.

> 2. The February 15, 2023[,] Order accurately reflects the Court's ruling made on that day and shall serve as an accurate record of the hearing on the Defendant's motion to vacate that occurred on that day as well as the arguments contained in the briefs of both parties. "

Appellate briefing was completed in 2024, and our review followed.

¶ 29                                   II. ANALYSIS

¶ 30        Defendant's primary claim on appeal is that the trial court abused its discretion by not granting her motion to vacate.

¶ 31        On appeal defendant also claims that the trial court erred in dismissing portions of her answer and affirmative defenses and her second counterclaim. However, defendant fails to explain how the relief she sought was not available through the malpractice claim left extant. Defendant also claims that the trial court erred in awarding printing and court reporter fees, but she does not explain how this claim was not waived when she failed to show up.[5] Thus, we turn to her primary claim, which is that the trial court abused its discretion by not granting her motion to vacate.

¶ 32        To this question, defendant asserts that section 2-1203 applies, while plaintiff argues that our review should be governed by section 2-1301 (735 ILCS 5/2-1301 (West 2020)). We set forth both, and we find, as we explain below, that the ultimate result is the same whichever one we apply.

¶ 33                              A. Standard of Review

¶ 34        Since a decision whether to grant a motion under section 2-1301(e) (735 ILCS 5/2-1301(e) (West 2020)) or section 2-1203 is discretionary, we review a trial court's ruling only for an abuse of discretion. *McNulty v. McNulty*, 2022 IL App (1st) 201239, ¶ 42 (since a decision under section 2-1301 is discretionary, "we review a trial court's ruling under this

---

[5]In her opening appellate brief, defendant argued that costs and fees were not statutorily authorized. Plaintiff responded that the court did not award attorney fees and that the court costs were authorized by the parties' contract which provided that, if the client fails to pay the invoiced amount, she shall be responsible for the costs of collection, including court costs and attorney fees. In reply, plaintiff argued that costs should not include copying and court reporter fees.

section only for an abuse of discretion"); *Langone v. Schad, Diamand & Shedden, P.C.*, 406 Ill. App. 3d 820, 830 (2010) ("The law is clear that it is within the trial court's discretion whether to grant or deny a section 2-1203 motion."). "An abuse of discretion occurs when the trial court's decision is arbitrary, fanciful, or unreasonable or where no reasonable person would take the position adopted by the trial court." *McNulty*, 2022 IL App (1st) 201239, ¶ 42. Under an abuse-of-discretion standard of review, the issue is not what decision we would have reached if we were reviewing the facts on a clean slate, but whether the trial court acted in a way that no reasonable person would. *McNulty*, 2022 IL App (1st) 201239, ¶ 42.

¶ 35  In addition, the trial court held pretrial proceedings, a trial, and a hearing on defendant's motion to vacate, and ultimately found that "[d]efendant has not stated a good cause for vacating the judgment." The trial court was familiar with both parties, and this court could never duplicate that kind of familiarity from a cold record. Any credibility determinations made by the trial court are also entitled to great deference by this court. *People v. Parker*, 2016 IL App (1st) 141597, ¶ 29 ("[w]e afford great deference to the circuit court's assessment of a witness's credibility").

¶ 36                                    B. Section 2-1301

¶ 37  Plaintiff cited section 2-1301(e) of the Code (735 ILCS 5/2-1301(e) (West 2020)), which provides that a trial court "may on motion filed within 30 days after entry thereof set aside any final order or judgment upon any terms and conditions that shall be reasonable." When the trial court contemplates the motion, "the overriding consideration is whether substantial justice was done among the parties." *McNulty v. McNulty*, 2022 IL App (1st) 201239, ¶ 43.

¶ 38    As defendant observed in her trial court filings, a section 2-1301(e) motion is typically directed at a judgment on the pleadings (*e.g.*, 735 ILCS 5/2-1301(e) (West 2020)) or based on documentary evidence (*e.g.*, *McNulty*, 2022 IL App (1st) 201239, ¶¶ 18-20). Thus, the movant need not necessarily show that she or he had either a meritorious defense or a reason for not setting forth the defense earlier; instead, the primary question is whether it is now reasonable, under the circumstances, "to force the other side to go to trial on the merits." *McNulty*, 2022 IL App (1st) 201239, ¶ 43; *Draper & Kramer, Inc. v. King*, 2014 IL App (1st) 132073, ¶¶ 23, 39 (a movant need not "necessarily" show a meritorious defense and "all defendant seeks in this case is a trial on the merits" (internal quotation marks omitted)). By contrast, in the case at bar, a trial on the merits has already been held. The question then is whether it is fair, under the circumstances, to force the other side to go to trial a second time when the moving side was absent. Most of the winning side's script is now etched in stone, thereby turning a prior proceeding into a mere dress rehearsal for the benefit of the missing party. The missing party is rewarded for its absence with a transcript of the other side's case and a detailed explanation of the court's reasoning and thinking, without having had to expose any of its own witnesses to cross-examination.[6]

¶ 39    In determining whether substantial justice is being done under section 2-1301, a court should consider all the events leading up to the judgment. *McNulty*, 2022 IL App (1st) 201239, ¶ 43; *Draper*, 2014 IL App (1st) 132073, ¶ 23. What is just and proper must be determined by the facts of each case and not by a hard and fast rule that is applicable to all cases, regardless of outcome. *McNulty*, 2022 IL App (1st) 201239, ¶ 43; *Draper*, 2014 IL App (1st) 132073, ¶ 23. Relevant considerations include the diligence or lack thereof by the movant and the

---

[6]Defendant asserted that she had two witnesses waiting with her in addition to herself.

relevant hardships on the parties from granting or denying the motion. *Draper*, 2014 IL App (1st) 132073, ¶ 23.

¶ 40                                     C. Section 2-1203

¶ 41        While plaintiff argues the applicability of section 2-1301, discussed above, defendant filed her motion pursuant to section 2-1203. Section 2-1203 provides that "[i]n all cases tried without a jury, any party may, within 30 days after the entry of the judgment *** file a motion *** to vacate the judgment." 735 ILCS 5/2-1203 (West 2020).

¶ 42        For the general principles governing section 2-1203, plaintiff cites in support *Langone*, 406 Ill. App. 3d at 828, and *In re Marriage of King*, 336 Ill. App. 3d 83, 87 (2002). These cases provide that the purpose of a motion to vacate under section 2-1203 is to alert the trial court to errors it made and to afford an opportunity for their correction. *Langone*, 406 Ill. App. 3d at 828; *King*, 336 Ill. App. 3d at 87. Specifically, the intended purpose is to bring to the court's attention: (1) newly discovered evidence, (2) changes in the law, or (3) errors in the court's previous application of existing law. *Langone*, 406 Ill. App. 3d at 829; see *King*, 336 Ill. App. 3d at 89-90 (discussing statutory changes and resolving issues of legislative intent). In the case at bar, none of these are at issue. Plaintiff does not seek to present newly discovered evidence, but rather evidence that she always had in her possession or knew of, but which she did not present due to her absence at the in-person trial.

¶ 43        Other cases discussed at length by defendant are inapposite and decades old. *In re Marriage of Sutherland*, 251 Ill. App. 3d 411, 412 (1993) did not involve a trial on the merits, as our case did. Further, the case involved a judgment on the pleadings and the trial court made a legal error in granting judgment. *Southerland*, 251 Ill. App. 3d at 414-15. As for *Tai Chen v. De La Cruz*, 67 Ill. App. 3d 313 (1978), it involved a different statutory section and, unlike our

case, involved a default judgment. *Tai Chen*, 67 Ill. App. 3d at 313. In *Mryszuk v. Hoyos*, 228 Ill. App. 3d 860, 862 (1992), the defendant was on time and waiting in the courtroom when his case was called. In addition, the appellate court found that defense counsel had a "reasonable explanation' for arriving late and was "duly diligent in trying to rectify the situation." *Mryszuk*, 228 Ill. App. 3d at 863. We cannot make a similar due diligence finding on the facts of our case, where defendant failed even to call the number provided to Zoom litigants for that purpose.

¶ 44                                    D. The Case at Bar

¶ 45            On appeal, defendant offers no ground for her failure to appear for trial other than her unsworn claim that she misread the order.[7] We cannot find an abuse of discretion by the trial court in denying her posttrial motion to vacate, where she failed to show up in person as directed by an unambiguous and written court order; where a contemporaneous transcript shows that the trial court found that "we've heard no word from Ms. Jamison about her whereabouts whatsoever" after the court had waited 12 to 14 minutes in the hope of hearing from her; where defendant failed to support the allegations in her unverified motion with an affidavit from herself or from the two witnesses whom she alleged were waiting with her, or with a copy of the e-mail that she alleges that she sent to the court; where defendant otherwise acted pursuant to the November 3 order (which had ordered the in-person trial and did not contain the Zoom instruction sheet) by filing, as directed by the same order, a signed verification on November 9, 2022; where the trial was the second time that defendant had failed to appear; and where she alleges that she e-mailed chambers but does not allege that she called,

---

[7]Defendant makes no claim that English is a second language.

although the one-page Zoom instruction sheet that she had received for prior court dates provided a telephone number to call if she had any questions.

¶ 46      This trial was no rubber stamp. The 27-page transcript establishes that the court listened closely to plaintiff's testimony, asked him numerous questions, and reviewed his documents. As we already noted above, if a new trial was granted, defendant would be rewarded for her absence by being in a better position that she would have been if she had showed up, and plaintiff would be at an adversarial disadvantage in any ensuing proceeding.

¶ 47                                III. CONCLUSION

¶ 48      For all the foregoing reasons, we can find no abuse of discretion by the trial court and must affirm.

¶ 49      Affirmed.

---

### *Wolkowitz v. Jamison*, 2024 IL App (1st) 230455

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 20-M2-1971; the Hon. Jeffrey L. Warnick, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Philip J. Piscopo, of Storm & Piscopo, P.C., of Geneva, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | David Wolkowitz, of Skokie, *pro se*. |

---